ANNIE ·E. DOBLEMAN

*v.*

THE GATELY & HURLEY COMPANY.

[Filed December 4th, 1902.]

1. A complainant who asks a preliminary injunction must show a clear right in himself. If the complainant has no equity or the showing of it is doubtful, it is of no significance how defective the title upon which the defendant relies may be.

2. A complainant with knowledge of a projected improvement by building over an alley, signed a writing relinquishing all claim to the alley. waited several weeks while the buildings were being erected on it, then repudiated the writing, and afterwards filed her bill without disclosing any of these facts, and moved for a preliminary injunction to restrain the erection of the building over the alley.—*Held*, the writ will be refused.

On bill and affidavits.   On answer and affidavits.   On order to show cause, &c.

The complainant is the owner of a house and lot of land, No. 809 Broadway, Camden, New Jersey. The bill alleges that in 1857 James Field, her paternal grandfather, laid out an alley, five feet wide, running from the rear end of her lot (809 Broadway) in a westerly direction, a distance of fifty feet, to the east side of Welsh street, and dedicated it to the use in common of his houses on Pine street and on Broadway, including No. 809, and that it has since been continuously used by the occupiers of the Pine street houses and by the complainant, owner and occupier of her house, No. 809 Broadway; that she has used the alley for twenty-five years and her father before her for twenty years.

The complainant further alleges that the fee of the alley is undivided, and resides in herself and other heirs of the said James Field. The bill further alleges that the Pine street house

lots, which run back to and bound upon the north side of the alley, have come, by various conveyances, to be owned by the defendant, the Gately & Hurley Company, and that said company has, without right, appropriated to its own exclusive use the whole of the width and length of the said alley, and has started to build stone foundation walls across the east, west and south sides of it, and thereby threatens entirely to close it and destroy the complainant's use and enjoyment of it. The complainant prays that the Gately & Hurely Company may be restrained from erecting any walls or buildings over and upon the alley in question, and thereby obstructing and preventing its use.

On the filing of the bill and affidavits an order was allowed that the defendant company show cause why an injunction should not issue restraining it from erecting walls or buildings upon the alley at the rear of the Pine street lots, and commanding it to remove any walls or buildings now erected upon the alley.

On the coming in of the order the defendant company filed its answer and supporting affidavits.

The answer denies that the alley was dedicated by James Field for the use of 809 Broadway, in common with others, and denies that it has since been continuously used by the owners and occupiers of 809 Broadway, and further denies that the fee in the land named in said alley is in anywise in the complainant; on the contrary, the defendant company insists that it is the sole and exclusive owner thereof; and further denies that the complainant is the owner of any right to use the alley, and also denies that she has occupied it for twenty-five years and that her father before her had occupied it for twenty years; and insists that the complainant never had any right or estate in the alley in question. The defendant company admits that it is the owner of houses fronting on Pine street, and alleges that, as the alley was first laid out, it extended only along the rear of lots Nos. 524, 526 and 528 Pine street, and did not reach across the rear of No. 530 Pine street, and did not touch the rear of the complainant's property, No. 809 Broadway; that about the year 1875 the alley was extended across the rear of lot No. 530; and there-

Dobleman *v.* Gately & Hurley Co.

upon the complainant (who was living in the premises No. 809 Broadway) cut a hole through the rear fence of the property abutting on said alley, through which water and refuse was swept, and in that year the owner of the premises Nos. 524 and 526 Pine street gave a door or gate to the complainant, who placed the same in the fence opposite the alley, but with a distinct promise that any dirt or refuse should be swept down and clear of the alley, and with the express agreement that the complainant should thereby obtain no right or interest in the alley, and that the owners of the lots fronting on Pine street might at any time stop the complainant's use of the alley; that afterwards the alley was closed for a year by one of the owners of the Pine street lots, and was afterwards permitted to be opened, on the complainant's application, to be used for a water-course and sweepings, upon the express condition that at any time, on the request of the owners of the Pine street lots, the complainant would cease using it, and that thereafter all of the use made of the alley by the complainant was subject to such express agreement. The defendant further alleges that the complainant has expressly relinquished any estate or right she had in said premises to the defendant company, and further insists that it is the owner in fee of the whole of the alley and of an absolute estate therein, and that it has closed up and destroyed the use of the alley, and proposes to cover with buildings the ground formerly occupied by the alley, and that it has a lawful right so to do.

Argument was heard on the bill and affidavits annexed, the answer and affidavits annexed, copies of the wills of James Field and of George W. Field and several deeds exhibiting the preceding and present holding of title to the lots on Pine street and on Broadway.

15

Dobleman *v.* Gately & Hurley Co.

The following diagram, exhibited at the hearing, shows the location and relation of the alley to the lots:

*Mr. William J. Kraft* and *Mr. Howard Carrow,* for the complainant.

*Mr. Edward Ambler Armstrong,* for the defendant.

GREY, V. C.

The complainant claims to be the owner of the fee in the alley by descent from her grandfather, James Field. She admits that owners of the Pine street lots have right of way over it, but claims that, as owner of lot No. 809 Broadway, she is entitled to use and enjoy the way over the alley in common with them.

The defendant claims to be the owner in fee-simple absolute of the whole of the alley, without charge thereon of any right of way in favor of the complainant. It insists, also, that it purchased a relinquishment of any possible claim that the complainant might assert, by a written memorandum, hereinafter referred to, and that it has proceeded to erect its buildings on the faith of that settlement. It admits that it proposes to build upon the whole of the alley, which will exclude any use of it by the complainant as a way, and claims the right so to do.

The question of the defendant's title to the land on which it is building need not be considered until the complainant's right to the relief she seeks has first been determined; for even, if the defendant company is about to do a wrong, it must appear that the wrong threatened is prejudicial to the complainant's rights, else she has no *status* to make complaint. *Miller* v. *Craig, 3 Stock. 175.*

I have not found it to be necessary to consider the defendant company's claim that it owns the land within the alley in fee, nor to determine the effect of the alleged purchase of a release of the complainant's possible interest, for the reason that the defendant's answer and accompanying affidavits insist that the complainant has neither title to nor right of enjoyment in the alley in dispute. This puts upon the complainant the burden of showing affirmatively that she has such a clearly established right as entitles her to the protection of this court. If she has no equity, it is of no significance how defective the defendant's title may be.

The complainant bases her right to a preliminary injunction upon several grounds. She alleges that the alley was dedicated by James Field to the use in common of the Pine street and Broadway houses. No deed or plan of lots made by James Field is produced. His will contains no dedication. The earliest documentary proof which refers to the alley is a deed from the executors of Frank Williams, a grantee from James Field, dated in 1868, conveying the lot No. 528 Pine street. The lot conveyed bounds on the north side of the alley, and the deed passes the free use of the alley, "in common with the owners and occupiers

Dobleman *v.* Gately & Hurley Co.

of the other properties fronting on Pine street whose outlets are on and through said alley," and does not indicate that the Broadway lot-owners were to share in the use of the alley.

The only evidence tending to establish a dedication of the alleyway by James Field, as alleged in the bill, is in the two affidavits of the complainant herself and her sister annexed to the bill. These affidavits state that the

"alley was dedicated by * * * James Field for the use, in common, of the abutting properties, of which said premises, No. 809 Broadway, is one, and has been used continuously since as an alleyway."

The affidavits state no mode whereby a dedication was effected, nor do they narrate any incident having that result. They simply swear to the legal conclusion that there was a dedication. Other disinterested witnesses, former owners of the Pine street houses, whose affidavits are annexed to the answer, state facts which repel the idea that there ever was a dedication of the alley in favor of the lot No. 809 Broadway.

It is quite impossible to say that, on this point, the complainant's right is established with the certainty that is required upon the allowance of a preliminary injunction. *Hagerly* v. *Lee, 18 Stew. Eq. 256,* and cases there cited.

The complainant also claims that she is the owner of an undivided interest in fee-simple in the land within the area of the alley, and that attendant thereon there is a right to use the alley. She admits that the owners of the Pine street lots have a right of way there, but she insists that it is in common with herself, as owner of No. 809 Broadway, succeeding her grandfather's ownership of that lot. This claim is inconsistent with her assertion of a dedication of the alleyway by James Field, in his lifetime, for the use of the owners whose lots abut upon it. The refuting affidavits annexed to the answer tend to show that, while there probably was a dedication, it was solely and exclusively for the benefit of the Pine street lots, and that the owners of No. 809 Broadway had no share therein, but were afterwards allowed, by mere parol license from the Pine street owners, to use the alley as a drain.

Dobleman *v.* Gately & Hurley Co.

None of the proofs on the point of dedication, on either side, is conclusive. The complainant is bound to show a clear right, and has not done it.

The complainant also claims to have used the alley as a right of way for twenty-five years and that her father before her used it for twenty years. This claim is also met by the defendant's refuting affidavits, to the effect that the complainant enjoyed the privileges of the alley as a mere licensee of the Pine street lot-owners. Her claim on this contention is open to the same objection—it is not sufficiently well established to justify the issuing of a preliminary injunction.

Another difficulty in the way of granting a preliminary injunction in this case arises by reason of the complainant's own conduct after the defendant company had begun the construction of its building over the alley. The affidavits annexed to the answer show that the defendant company had made contracts and commenced the erection of the building in question in such a manner as to occupy all the lands within the area of the alley. At this stage of the affair the complainant and the general manager of the defendant company had a conference and discussed the plans for the building and the closing up of the alleyway. The complainant was told that the defendant had planned to close the alley. She claimed she had a water-course through it. The defendant's manager proposed to fix a drain to take care of all the water; the complainant assented to this, and the defendant company proceeded with its work. Afterwards, about June 11th, the defendant's manager called on her and the substance of the previous conversation was repeated, and a memorandum, in writing, between the parties was made, in these words and figures:

"CAMDEN, June 11th, 1902.

"In consideration of $31.25 I hereby relinquish all claim to alley in rear of my premises. Said alley being used in common for Pine street houses, upon which I claim to have a water right. Gately & Hurley Co. hereby agree to take care of drainage and always maintain same.

"GATELY & HURLEY Co.,
"W. L. HURLEY, Treas.,
"ANNIE E. DOBLEMAN."

Dobleman v. Gately & Hurley Co.

The consideration—$31.25—was a debt which the complainant owed the defendant company.

The defendant company, after making the above arrangement with the complainant, continued its building work, putting in a drain to carry off water as arranged as part of the improvement. After the work had been going on for some weeks the complainant repudiated the writing which she had signed, and returned the $31.25, saying her husband was not willing that she should sell her rights in the alley, and that he had not signed the paper. She filed her bill in this cause on October 9th, 1902. The affidavit of the defendant company's manager shows that at the time when the complainant attempted to repudiate the above-stated arrangement the defendant company's plans had been made for the improvement in question, contracts had been given out and that the work on the ground was in actual construction and progress, so that it was impossible for the defendant company at that time to change it.

This narration of an attempted settlement between the parties, whether effectual or not (and upon this it is not necessary presently to pass), was within the knowledge of the complainant when she filed her bill and her own affidavit in support thereof. It is not in any way disclosed either by the bill or her affidavit. Her present application is for a preliminary injunction to stop the defendant company from doing the thing which she knew was intended to be done, and which had actually been in progress for several weeks, with her assent, and which cannot now be stopped without material injury to the defendant company. Without determining the effect of the arrangement stated upon the complainant's legal rights, if any she has, its existence and non-disclosure by her in her bill of complaint ought certainly to prevent the allowance of a preliminary injunction.

I will advise an order refusing the writ, with costs.